**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DANNY LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 24-cv-02697 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| FOREMOST INSURANCE COMPANY | ) | |
| GRAND RAPIDS, MICHIGAN, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Following a destructive fire at a property he owned, Plaintiff Danny Lewis submitted a claim to his insurance company, Defendant Foremost Insurance Company Grand Rapids, Michigan ("Foremost"). There was no dispute about whether the loss was covered by the insurance policy. But the parties disagreed on the value of the loss. Lewis eventually demanded an appraisal to determine the value of the loss, as was his right under the insurance policy. The appraisal was conducted and the two appraisers—one chosen by Lewis, one chosen by Foremost—jointly determined an appraisal award. The insurance policy provided that if the appraisal award was equal to or greater than the amount of money the insured asked for before demanding the appraisal, Foremost would pay the fee of the appraiser hired by the insured. Otherwise, each party would pay their own appraiser's fees. Lewis and Foremost dispute the amount of money Lewis requested before making his appraisal demand. As a result, Foremost has refused to pay the fee for Lewis's appraiser, leading to this litigation. Lewis initially filed his three-count complaint in Illinois state court, seeking a declaratory judgment, alleging breach of contract, and requesting fees, costs, and statutory damages under the Illinois Insurance Code, 215 ILCS 5/155. Foremost then removed the action to federal court pursuant to 28 U.S.C. §§ 1332,

1441(b). Both parties now move for summary judgment on all counts. (Dkt. Nos. 19, 22.) For the reasons stated below, the Court grants Foremost's motion (Dkt. No. 19) and denies Lewis's motion. (Dkt. No. 22.)

## BACKGROUND

The following facts are drawn from the parties' submissions pursuant to Local Rule 56.1.[1] They are undisputed unless otherwise noted.

Foremost issued an insurance policy to Lewis. (Pl.'s Resp. to Def.'s Statement of Material Facts ("PRDSMF") ¶ 3, Dkt. No. 27-1.) The policy insured Lewis's interest in a building located in Chicago. (*Id.*) The policy also included the following appraisal provision:

> **Appraisals.** If [the insured] and [Foremost] fail to agree on the amount of the loss, then both [the insured] and [Foremost] have the right to select a competent and disinterested appraiser within 20 days from the day of disagreement. The appraisers will determine the amount of the loss. . . . If the amount of loss is determined to equal or exceed the full amount which [the insured] demanded prior to the appraisal, then [Foremost] will pay [the insured's] appraiser's fee . . . . Otherwise [the insured] pay[s] [his] appraiser and [Foremost] pay[s] [its] appraiser.

(Ex. 2, Insurance Policy Enclosure 4, Dkt. No. 21-2.)

On May 19, 2021, a fire damaged the building covered by the insurance policy. (PRDSMF ¶ 5.) On or about March 1, 2022, Lewis, through his agent, submitted a Sworn Statement in Proof of Loss ("Sworn POL") dated February 23, 2022, to Foremost. (*Id.* ¶ 6.) The Sworn POL was notarized and signed under penalty of perjury. (Ex. 3, Sworn POL, Dkt. No. 22-

---

[1] Lewis's submissions pursuant to Local Rule 56.1 have significant flaws. In his statement of material facts, his statement of additional material facts, and his response to Foremost's statement of material facts, many of the numbered paragraphs lack references to evidence in the record. Those references are required under the rule. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218–19 (7th Cir. 2015). Moreover, the Court may disregard or deem admitted any asserted fact that is not supported by citation. L.R. 56.1(d)(2), (e)(3). Lewis's statements are also "replete with legal arguments," which are improper and not contemplated by the rule. *Curtis*, 807 F.3d at 219. While the Court has discretion to require strict compliance with Local Rule 56.1, *id.*, the Court is satisfied that the material facts here are presented well enough for Lewis to avoid sanction for noncompliance. Still, the Court will not credit any of Lewis's assertions or denials that are not made clearly and concisely in a way that accurately reflects the record.

5.) Foremost received the Sworn POL on or about March 1, 2022. (PRDSMF ¶ 6.) The parties

dispute which, if any, monetary amount entered on the Sworn POL represents Lewis's demand

for payment under the policy with Foremost. (Pl.'s Statement of Additional Material Facts

("PSAMF") ¶¶ 12–13, Dkt. No. 27-2.) However, it is clear that Foremost responded to Lewis by

letter on March 1, 2022, and "expressly rejected" the Sworn POL. (PRDSMF ¶ 6.) The letter

rejecting the Sworn POL was accompanied by a blank form through which Foremost indicated

Lewis could "submit a new Proof of Loss . . . that complies with the provisions of [Lewis's]

policy." (*Id.*) Nothing in the record shows that Lewis ever submitted a new proof of loss form.

Rather, on or about March 4, 2022, Lewis submitted a demand for appraisal dated February 15,

2022.[2] (*Id.* ¶ 7.) The letter named Zachary M. Baker as his appraiser. (*Id.*) On March 8, 2022,

Foremost acknowledged Lewis's demand for an appraisal and named T. J. Welte as its own

appraiser. (*Id.* ¶ 8.) Pursuant to the appraisal provision of the insurance policy, Baker and Welte

reached agreement and entered an appraisal award in September 2022. (*Id.* ¶ 9.) Ultimately,

Baker and Welte determined a total appraisal award of $1,308,622.11. (Ex. 4, Appraisal Award,

Dkt. No. 21-5.) Foremost then declined to pay Lewis's appraiser's fee because, it asserts, Lewis

initially claimed an amount higher than the amount determined through the appraisal process.

(PSAMF ¶ 13.) Specifically, Foremost takes the position that Lewis claimed $1,808,702.80—an

amount far exceeding the appraisal award. (*Id.*)

Lewis's three-count Complaint seeks a declaratory judgment requiring Foremost to fully

reimburse Lewis for his appraiser's fee (Count I). He similarly claims breach of contract

stemming from Foremost's refusal to pay the appraiser's fee and seeks related damages (Count

---

[2] Lewis states that he is "uncertain on the precise date," but admits sending the letter. (PRDSMF ¶ 7.) He
does not controvert Foremost's statement that it was submitted on or about March 4, 2022. (*Id.*)

II). Finally, Lewis alleges a violation of 215 ILCS 5/155, an Illinois statute that provides an extracontractual remedy against an insurance company where the company engaged in "vexatious and unreasonable" delay in settling a claim (Count III). Both Lewis and Foremost move for summary judgment on all counts. (Dkt. Nos. 19, 22.)

## DISCUSSION

Summary judgment is proper where admissible evidence, considered as a whole, shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, even after all reasonable inferences are drawn in the non-movant's favor. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011); Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial responsibility of "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Once the moving party has made a properly supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted). "A dispute is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson*, 477 U.S. at 248).

"The ordinary standards for summary judgment remain unchanged on cross-motions for summary judgment." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017). Courts take "the facts in the light most favorable to the non-movant, first for one side and then for the other." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Loc. Union 150*, 335 F.3d 643, 648 (7th Cir. 2003). "Each motion is to be evaluated independently, and denial of one does

4

not necessitate the grant of the other." *Dominguez v. Quigley's Irish Pub, Inc.*, 790 F. Supp. 2d 803, 810 (N.D. Ill. 2011) (internal quotation marks omitted).

## I.     Declaratory Judgment and Breach of Contract (Counts I and II)

Counts I and II of the Complaint both, at bottom, ask the Court to determine whether Foremost was obligated to pay Lewis's appraiser's fee. Accordingly, the Court considers the counts together.

An insurance policy is a contract. *ABW Dev., LLC v. Cont'l Cas. Co.*, 203 N.E.3d 922, 928 (Ill. App. Ct. 2022). "If the words used in the policy, given their plain and ordinary meanings, are unambiguous, they must be applied as written. Courts must not strain to find ambiguity in an insurance policy where none exists." *Id.* (citations and internal quotation marks omitted). In Illinois, breach of contract requires "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Henderson-Smith & Assocs., Inc. v. Nahamani Fam. Serv. Ctr., Inc.*, 752 N.E.2d 33, 43 (Ill. App. Ct. 2001). The parties in this case dispute only the third element: whether Foremost breached the insurance policy by refusing to pay for Lewis's appraisal.

This case comes down to a single factual dispute. If, prior to demanding an appraisal, Lewis asked for less than $1.3 million, the amount eventually calculated in the appraisal award, then Foremost was obligated to pay Lewis's appraisal fee. If, on the other hand, Lewis asked for more than that amount, Foremost had no obligation to pay and did not breach its contract by declining to do so. Foremost insists that Lewis asked for roughly $1.8 million before he demanded an appraisal. Lewis, for his part, argues that he only ever asked for the maximum amount available to him under the policy. That policy limit was in fact $702,920.40, although

5

Lewis claims he thought it to be $779,448.00. (PSAMF ¶¶ 2–3, 6, 23.) Regardless, the maximum possible amount, subject to his policy limits, was significantly below the ultimate appraisal award, while $1.8 million was significantly above it. But while the parties dispute this fact, it does not rise to the level of a genuine dispute of material fact sufficient to preclude summary judgment. For a dispute of fact to be "genuine," there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. If, however, the moving party successfully "point[s] out to the district court . . . that there is an absence of evidence to support the nonmoving party's case," they are entitled to summary judgment. *Celotex Corp.*, 477 U.S. at 325. Upon review of the record, there may be admissible evidence supporting Foremost's position. However, as discussed below, that evidence cannot sustain Lewis's position. Lewis cannot therefore carry his initial burden as the moving party. Nor can he, as the nonmoving party, present evidence sufficient to defeat Foremost's motion.

### A.     The Sworn POL

Foremost argues that the Sworn POL, submitted on Lewis's behalf, represents Lewis's demand for payment of $1.8 million on his claim. Lewis counters with two main arguments. First, he contends that because Foremost rejected the Sworn POL, it could not have served as his pre-appraisal monetary demand. Second, he argues that, even if the Sworn POL was his demand prior to appraisal, the document shows a demand for $779,448.00, not $1.8 million. Finally, Lewis makes the ancillary argument that the language of the blank form Foremost provided to him when it rejected the Sworn POL should inform the Court's interpretation of what he wrote on the Sworn POL.

*1.*      *Rejection of the Sworn POL*

Lewis's first argument is unavailing and seems to arise from a misunderstanding of what it means to reject a statement in proof of loss. A "proof of loss is a legal document whereby the insured swears under penalty of perjury that the claim [he] is submitting to the insurer is accurate and proper." *Tower Crossing Condo. Ass'n, Inc. v. Affiliated FM Ins. Co.*, No. 21 C 6228, 2025 WL 3063487, at *3 (N.D. Ill. Nov. 3, 2025) (internal quotation marks omitted). The purpose of the document is "to furnish the insurer with the particulars of the loss and all data necessary to determine its liability and the amount thereof." *Id.* at *2 (internal quotation marks omitted). Lewis's policy with Foremost provides that, when a loss occurs, "[Foremost] may require that [the insured] submit to [Foremost] a notarized statement of loss." (Ex. 2, Insurance Policy 15, Dkt. No. 21-2.) The policy further provides that "[Foremost] will make settlement within 30 days after [Foremost] receive[s] an ***acceptable*** proof of loss from [the insured] and the amount of loss is determined as provided in this policy." (*Id.* (emphasis added).) In other words, once Foremost requests a proof of loss statement, it must receive and accept a properly supported proof of loss statement as a precondition for paying the insurance claim.

As best as the Court can tell, Lewis's argument is that, when Foremost rejected the Sworn POL, any claim contained in the form ceased to operate as a demand on Foremost. In context, however, that argument falls apart. Foremost, per its March 1, 2022, letter, rejected the Sworn POL because "there were no documents attached to support the amount claimed on the Proof of Loss." (Ex. 5, Letter dated March 1, 2022, Dkt. No. 22-7.) The letter goes on to state that Lewis was free to "submit a new Proof of Loss form that complies with the provisions of [Lewis's] policy." (*Id.*) And enclosed with the letter was a new proof of loss form for the purpose of resubmission. (*Id.*) The letter did not deny Lewis's claim. Rather, the letter informed

7

Lewis that the Sworn POL was not an acceptable proof of loss as required to receive payment under the policy, explained why it was not acceptable, and provided a mechanism to resubmit. It is not unusual for an insurance company to reject a proof of loss statement and request one with more detail. *See Horton v. Allstate Ins. Co.*, 467 N.E.2d 284, 284 (Ill. App. Ct. 1984) ("Pursuant to the terms of the policy, [the plaintiff] submitted 'sworn statements of proof of loss' to Allstate. Allstate rejected those statements and requested more detailed statements, as well as additional documentation to which it contends it was entitled under the terms of the policy.")

Nothing about the March 1, 2022, letter from Foremost suggests that Foremost did not intend to fulfill its obligations under the policy. *See id.* at 286 (holding that a similar letter rejecting a proof of loss statement was not evidence indicating that the insurance company did not intend to pay a claim). Consider the alternative approach available to Foremost. Accepting, rather than rejecting, the Sworn POL would have meant accepting the amount claimed on the form, potentially obligating Foremost to pay that amount to Lewis. Although necessarily phrased as a rejection, the letter simply indicated that the documentation attached to the Sworn POL was insufficient to allow Foremost to accept the claim. *Cf. Davis v. Allstate Ins. Co.*, 498 N.E.2d 246, 247–48 (Ill. App. Ct. 1986) (contrasting an insurer's outright denial of a claim because of fraud with rejection of a sworn proof of loss due to a technical defect or other issue inviting amendment, and noting that such a rejection often results in a subsequent proof of loss being accepted). Accordingly, Foremost asked Lewis to try again and even provided a blank form so that he could do so. However, Lewis "made no attempt to comply with [Foremost's] request and took no action to either excuse or dispute his noncompliance." *Horton*, 467 N.E.2d at 284.

Had Lewis submitted a subsequent proof of loss statement, he could reasonably argue that the Court should ignore the first Sworn POL as no longer operative. But the record does not

show that Lewis submitted a new proof of loss statement or communicated anything else purporting to express the amount of his claim. Instead, he initiated the appraisal process. Given that the purpose of a proof of loss statement is to communicate the amount claimed under an insurance policy, *Tower Crossing Condo. Ass'n, Inc.*, 2025 WL 3063487, at *3, and that the Sworn POL is the only evidence in the record indicating a monetary demand, the Court concludes that it represents Lewis's pre-appraisal demand. *See Metro. Cas. Ins. Co. v. Goriola*, No. 11-cv-00745, 2013 WL 6501705, at *4 (S.D. Ill. Dec. 11, 2013) ("Acceptance or rejection of the proof of loss is irrelevant. [The insured] sent to [the insurance company] a sworn, notarize [sic] statement in proof of loss thereby submitting these representations to the insurer.") Foremost's letter rejecting the Sworn POL supports, rather than negates, that conclusion.

### 2. The Relevant Line Item on the Sworn POL

Lewis's second argument is that, even if the Sworn POL must be treated as his pre-appraisal demand, the form only indicates that he demanded $779,448.00, the amount that Lewis mistakenly believed to be the maximum available subject to the limits of his policy. While the actual limits totaled $702,920.40, Lewis insists that all he ever asked of Foremost was payment in full up to the limits of his policy. But upon review of the Sworn POL itself, this argument also fails.

The one-page Sworn POL, included as an exhibit by both parties, includes five blank spaces where the party completing the form is asked to enter a monetary figure. (Ex. 3, Sworn POL.) One space was completed as "unknown" and is not relevant to the Court's analysis. The other four spaces, however, form the crux of the matter. In the top left corner of the form, there is a space for the "POLICY AMT. AT TIME OF LOSS." Lewis entered $779,448.00 into this

space, indicating that he believed this to be the limit of his insurance coverage.[3] (*Id.*) Further down in the form, there is a space titled "TOTAL." Lewis entered the same amount, $779,448.00, into this field. (*Id.*) Although the title of the space is "TOTAL," the line itself explains that the insured should enter "THE TOTAL AMOUNT OF INSURANCE upon the property described by this policy at the time of the loss." (*Id.*) Throughout his filings, Lewis misleadingly neglects to include the full description of this field, (*e.g.*, Pl.'s Memo. Supp. Mot. for Summary Judgment 16–17, Dkt. No. 22-1), instead asserting only that he entered $779,448.00 on the line marked "TOTAL." He even suggests that the term "TOTAL" is "unclear and ambiguous," despite the clear and unambiguous description on the face of the Sworn POL but omitted from his brief. (*Id.*) Slightly further down on the form, there is a field titled "LOSS" and described as "THE WHOLE LOSS AND DAMAGE." Lewis entered $1,808,702.80 on this line. (Ex. 3, Sworn POL.) Lewis argues that this line is the basis for Foremost's assertion that Lewis demanded that amount prior to demanding an appraisal.

If that line were indeed the only basis for asserting that Lewis had demanded $1.8 million, Lewis might have a strong argument. It would be entirely consistent for a claimant, estimating the full scale of his loss, to indicate one number that expressed the entire amount of damage, while elsewhere demanding a lower number in line with the constraints of his policy. However, the "LOSS" line is not the only basis for Foremost to conclude that Lewis demanded $1.8 million. Rather, that conclusion is based on the final numerical field on the form, titled "AMT. CLAIMED." This field calls for "THE AMOUNT CLAIMED under the above numbered policy number." (*Id.*) Lewis entered the same amount, $1,808,702.80, in this field. (*Id.*)

---

[3] It is not clear whether Lewis or his agent completed the form. However, because Lewis is liable for his agent's actions in completing and submitting the form, *Bank of Waukegan v. Epilepsy Found. of Am.*, 516 N.E.2d 1337, 1339 (Ill. App. Ct. 1987), the Court refers to Lewis alone for simplicity.

Throughout the dozens of pages he has filed in connection with the cross-motions for summary judgment, Lewis never once acknowledges the existence of this field on the Sworn POL. As a result, he fails to mention that the amount he claimed on the form—not just the amount he estimated his damage to be—was $1.8 million.

Despite his protests that Foremost "cherry picked" the highest number from the Sworn POL (Pl.'s Memo. Supp. Mot. for Summary Judgment 16), Lewis ignores the most essential field to this case: the amount claimed under the policy. In fact, Lewis asserts that the Sworn POL form "does not have a space that expressly requests Plaintiff's demand prior to the appraisal." (Pl.'s Statement of Material Facts ("PSMF") ¶ 17, Dkt. No. 22-2.) Although the form does not use the word "demand," this statement is at best incorrect in view of the clear and unambiguous language of the Sworn POL. (*See* Ex. 3, Sworn POL ("THE AMOUNT CLAIMED under the above numbered policy number . . . .").) In context, the words "full amount . . . demanded" in the appraisal provision of the policy are synonymous with "amount claimed" on the Sworn POL. Black's Law Dictionary (12th ed. 2024) (defining "demand" as "[a] request for payment of a debt or an amount due" and defining "claim" as "[a] ***demand*** for money . . . to which one asserts a right") (emphasis added). Lewis offers no argument, other than obfuscation, as to why the term "demand" in the policy should not be given its "plain and ordinary meaning[]" in context, that is, the amount claimed under the policy. *ABW Dev., LLC*, 203 N.E.3d at 928; *see also Metro. Cas. Ins. Co.*, 2013 WL 6501705, at *2 ("[The insured] submitted a Sworn Statement in Proof of Loss to [the insurance company], making a formal demand for payment under the policy . . . .").

Reading the Sworn POL, there is no basis to interpret the monetary amount provided on "THE AMOUNT CLAIMED" line as anything but the amount that Lewis communicated that he should receive from Foremost. *See Lykos v. Am. Home Ins. Co.*, 609 F.2d 314, 316 (7th Cir.

1979) ("The plaintiffs . . . claimed a loss of $395,805 in their sworn statement in proof of loss . . . . It is clear from the evidence that plaintiffs submitted the claim with the intent of receiving the total amount.") Accordingly, no reasonable jury could find that the Sworn POL reflects a demand for $779,448.00 (or the maximum under the policy) as opposed to the $1.8 million entered as the amount claimed.

### 3. *Foremost's Blank Proof of Loss Form*

In an attempt to get past the clear language of the Sworn POL, Lewis directs the Court's attention to the language of the blank proof of loss form that Foremost enclosed in its March 1, 2022, letter rejecting the Sworn POL. Lewis argues that this second, blank form supports the conclusion that all for which he asked was the maximum amount available under his policy. Specifically, he notes that the final line on the blank form asks for the "Total Estimate Claim (Subject to applicable policy limits)." (PSMF ¶ 28.) In Lewis's view, the parenthetical instruction on the new form means that a demand on a proof of loss statement "cannot possibly be in excess of policy limits." (Pl.'s Memo. Supp. Mot. for Summary Judgment 17–18.) This conclusion does not follow from Lewis's premise, however. A range of circumstances exist where an insured might, through a proof of loss form, demand more than the limits of his policy. As a simple example, an insured might misunderstand the amount of coverage he has. Or the insured might hope to benefit from an oversight on the part of the insurance company. Whatever the reason, nothing prevents the insured from demanding an amount greater than the limits of his policy. And, as happened here, nothing prevents the insurer from rejecting that demand and providing more specific instructions when asking the claimant to resubmit. The demand, however, was still made. That the demand was for an amount of money that was not possible to recover under the policy does not destroy the demand itself.

12

Here, Foremost rejected the Sworn POL because the amount claimed, $1.8 million, was not supported by adequate documentation. Foremost then provided Lewis with a new form that included clear guidance that the amount claimed should be "subject to applicable policy limits." But Lewis never submitted the new form and never provided an updated claim amount that complied with Foremost's instructions. Lewis now asks the Court to use the language of a form that he did not send to Foremost to interpret his intent when completing the form that he actually did send to Foremost. But even if the Court were to accept that when he submitted the Sworn POL Lewis intended to demand the maximum amount subject to the limits of his policy, and nothing more, it would not matter. As discussed above, the Sworn POL unambiguously shows a demand for $1.8 million. If that claim was a result of mistake or misunderstanding, Lewis had a chance to correct his error by submitting the new form before demanding an appraisal. Instead, he chose not to do so. In this context, making a demand requires communicating the requested amount to the insurer. *Metro. Cas. Ins. Co.*, 2013 WL 6501705, at *2, 4. The Sworn POL is the only document in the record that does so.[4] Thus, the language of the blank proof of loss form is irrelevant to the task of determining whether the Sworn POL evidences that Lewis demanded $1.8 million before the appraisal.[5] In the face of clear evidence that he demanded $1.8 million

---

[4] In the same vein, Lewis references a letter dated October 6, 2023, **over a year after the appraisal**, that he received from Foremost. (Ex. 7, Letter dated Oct. 6, 2023, Dkt. No. 22-9.) The letter includes the sentence: "Thank you for clarifying that your demand was $779,000.00 as opposed to $1,808,702.80." All the letter indicates, taken in the light most favorable to Lewis, is that Lewis meant for his Sworn POL to reflect a demand for $779,000.00. That does not change the fact that the Sworn POL, on its face, reflected a demand for $1,808,702.80. The $1.8 million demand was the only representation submitted to the insurer describing the amount Lewis requested from Foremost. *Metro. Cas. Ins. Co.*, 2013 WL 6501705, at *4.

[5] Because the blank, unsubmitted, proof of loss form is ultimately irrelevant, the Court will not dwell on Lewis's discussion of his appraiser Baker's deposition testimony about the blank form. It suffices to say that Lewis's briefs and submissions under Local Rule 56.1 mischaracterize Baker's testimony. The testimony read in full lends no support to Lewis's argument. (*Compare* PSMF ¶¶ 54–58 (suggesting that Baker testified that the amount Lewis demanded pre-appraisal was only the limits of his policy), *with* Ex. 8, Baker Dep. Tr. 68:17–71:6, Dkt. No. 22-10 (showing Baker's understanding that the Sworn POL was

prior to the appraisal demand, Lewis fails to carry his initial burden on summary judgment. Viewing the evidence in the light most favorable to him, Lewis cannot demonstrate the absence of a genuine dispute of material fact. Therefore, Lewis cannot prevail on his motion for summary judgment. *Dynegy Mktg. & Trade*, 648 F.3d at 517.

### B.     Lewis's Affidavits

The question then becomes whether, with respect to Foremost's motion, there is any countervailing evidence preventing the Court from granting summary judgment in its favor. *Celotex Corp.*, 477 U.S. at 325 (stating that the moving party is entitled to summary judgment when "there is an absence of evidence to support the nonmoving party's case").

Lewis presents two personal affidavits to support his Local Rule 56.1 submissions. These affidavits are the only evidence supporting his assertion that, prior to the appraisal, he demanded the maximum amount of money up to the limits of his policy and nothing more. (*E.g.*, PSAMF ¶¶9, 12, 22–23, 25.) Foremost argues that these affidavits must be disregarded under the sham-affidavit rule. The Court agrees.

Under Federal Rule of Civil Procedure 56, the Court must "scrutinize the substance of an affidavit offered in response to a summary-judgment motion to determine whether a reasonable jury could rely on the factual statements it contains." *James v. Hale*, 959 F.3d 307, 315 (7th Cir. 2020). The Court "may disregard an affidavit that attempts to create a sham issue of fact." *Id.* at 311. Such a "sham" affidavit is "typically an affidavit that contradicts prior deposition testimony." *Id.* at 315. But in the Seventh Circuit courts also "disregard an affidavit that

---

rejected *because* Lewis demanded $1.8 million and his understanding that the new, blank proof of loss form included the specific clarifying instruction that any new demand made using the form should be within applicable policy limits).)

contradicts a statement made under penalty of perjury, even if the statement was not made in the course of litigation." *Id.* at 316.

The contradictions between Lewis's affidavits and the Sworn POL "fall squarely within the core of the sham-affidavit rule." *Id.* at 317. Although not made in the course of litigation, the Sworn POL is a previous statement made under the penalty of perjury. Lewis's affidavits directly contradict the unambiguous statement on the Sworn POL (*i.e.*, claiming $1,808,702.80). The affidavits make assertions that are not corroborated by "any evidence other than [Lewis]'s say-so" and serve only to create a sham issue of fact. *United States v. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 467 (7th Cir. 2005). "The organizing principle of our sham-affidavit practice is simply stated: a ***genuine*** issue of material fact cannot be conjured out of nothing." *James*, 959 F.3d at 316. Accepting the assertions in Lewis's affidavits would fly in the face of this principle. Moreover, none of the recognized exceptions to the sham-affidavit rule apply here. *Id.* at 317 (noting the Seventh Circuit allows contradictory affidavits: (1) when there is newly discovered evidence; (2) when a statement in a deposition is demonstrably mistaken; or (3) to clarify ambiguous or confusing deposition testimony).

There is no dispute that Lewis demanded an appraisal. There is also no dispute that the appraisers jointly determined the value of the loss to be $1.3 million. There is evidence that, prior to demanding an appraisal, Lewis demanded $1.8 million. Disregarding Lewis's affidavits, there is no evidence that Lewis demanded any other amount from Foremost. Thus, there is an absence of evidence supporting Lewis's case. As a result, there is no genuine dispute that Lewis demanded $1.8 million prior to demanding the appraisal, which eventually determined the value of the loss to be $1.3 million. Since $1.8 million is greater than $1.3 million, and since the terms of the appraisal provision are unambiguous, Lewis and Foremost were required to bear the cost

15

of their own appraisers. Therefore, no reasonable jury could find that Foremost breached the policy by declining to pay for Lewis's appraiser.

### C. The Appraisal

Lewis makes one additional argument with respect to the appraisal provision that the Court will briefly address. He argues that the appraisal never should have taken place because there was never a dispute as to the "amount of the loss." To make this argument, Lewis relies on the letter dated October 6, 2023, from Foremost to Lewis and his attorney. (Ex. 7, Letter dated Oct. 6, 2023.) The letter includes a sentence where Foremost states that it had "acknowledged prior to the appraisal demand that the damages exceeded the applicable policy limits." (*Id.*) Without reference to any legal authority, Lewis argues that this admission shows that the parties agreed, prior to the appraisal demand, that the amount of the loss was equivalent to the limits of his policy, that is, $702,920.40. The argument is flawed for at least two reasons.

First, the letter does not reflect an agreement on the value of the loss. The letter itself indicates that, "[p]rior to the demand for appraisal, [Foremost's] replacement cost for the damages was $807,101.07 . . . , though the actual cash value was under the policy limit." (*Id.*) The letter also reminds Lewis that, accepting his "clarif[ication] that [his] demand was $779,000.00 as opposed to $1,808,702.80," the total limit of his policy totaled "$702,920.40 not the $779,000.00 figure [he] ha[d] indicated." (*Id.*) Both parties acknowledging that the loss exceeded the policy limits is not the same as both parties agreeing on the amount of the loss. $779,000 is different than $807,101.07 and different than $1,808,702.80. All are above the policy limits, but they are not the same number. Nothing in the letter shows that the two parties reached agreement on the amount of the loss prior to the demand for appraisal.

Second, and more importantly, it does not matter that the appraisal may have been unnecessary. It was Lewis, not Foremost, who initiated it. Moreover, in formally demanding an appraisal, Lewis's demand letter stated: "The adjuster assigned to the claim has estimated an undisputed loss total that [Lewis] believe[s] is incorrect. [Lewis] disagree[s] with this amount of loss estimated by the Carrier and its representatives." (Ex. 4, Demand for Appraisal, Dkt. No. 21-4.) Believing that he and Foremost disagreed on the amount of the loss, Lewis had the right under the clear terms of the appraisal provision to demand an appraisal. He did so, and the appraisal then took place. His post-hoc view that it should not have happened in the first place is irrelevant to the question of who is obligated to pay the associated fees. Simply put, Lewis caused the appraisal. Thus, his own actions put him on the hook for the fees. It is not the Court's role to second guess those actions.

* * *

To sum up, Lewis presents no evidence, other than "sham affidavits," showing that he demanded an amount below $1.3 million prior to demanding an appraisal. In contrast, Foremost provides evidence, namely the Sworn POL, that Lewis demanded $1.8 million. Accordingly, there is no genuine dispute as to the material fact that Lewis demanded an amount greater than the appraisal award. As a result, both parties were required to pay for their own appraisers and Foremost did not breach the policy. Summary judgment on Counts I and II is denied to Lewis and granted to Foremost.

## II.     State Law Claim (Count III)

Section 155 of the Illinois Insurance Code allows a plaintiff in an action against an insurance company to recover "reasonable attorney fees, other costs, plus" statutory damages up to defined caps. 215 ILCS 5/155. Such recovery is permitted when the insurer denies a claim or

17

when there is an "unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable." *Id.*

Lewis argues that by refusing to pay the fee for his appraiser, Foremost acted in an unreasonable and vexatious manner. The Court need not dig into what Lewis asserts was Foremost's unreasonable or vexatious behavior, however, because Section 155 "presupposes an action on the policy." *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 902 (Ill. 1996). In other words, the statute "does not create an independent tort for which an insurance company can be held liable." *Moles v. Ill. Farmers Ins. Co.*, 229 N.E.3d 856, 862 (Ill. App. Ct. 2023). Rather, a Section 155 claim is tied to the substantive action asserting a claim under the insurance policy. So, "for a plaintiff to recover under section 155, he must also succeed in the action on the policy." *Hoover v. Country Mut. Ins. Co.*, 975 N.E.2d 638, 647 (Ill. App. Ct. 2012). Here, as discussed above, Lewis's substantive claim fails. His "breach of contract claim was not successful . . . , so it cannot support [his] claim for section 155 relief." *Moles*, 229 N.E.3d at 862.

Having granted summary judgment in Foremost's favor on Counts I and II, there is no remaining substantive claim to support Lewis's claim for Section 155 relief. Accordingly, the Court grants summary judgment to Foremost, and denies summary judgment to Lewis, on Count III as well.

18

**CONCLUSION**

For the foregoing reasons, Foremost's motion for summary judgment (Dkt. No. 19) is granted and Lewis's motion for summary judgment (Dkt. No. 22) is denied. The Clerk is directed to enter final judgment in favor of Foremost.

ENTERED:

Dated: March 23, 2026

Andrea R. Wood
United States District Judge

19